UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALAN S. NOONAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 06-CV-10716-WGY |
| v. | ) |
| | ) |
| STAPLES, INC., | ) |
| | ) |
| Defendant. | ) |

### STAPLES, INC.'S PRETRIAL MEMORANDUM

Pursuant to this Court's Procedural Order dated August 5, 2009, Staples, Inc. ("Staples") submits this Pre-trial Memorandum.

### Introduction

After discovery and motion practice before the District Court and First Circuit, Plaintiff Alan Noonan ("Noonan") has only one remaining claim, for defamation. The defamation claim arises out of a single e-mail that Staples Executive Vice President Jay Baitler sent following Noonan's termination. Both this Court (Lasker, J.) and the First Circuit have held that the statements in the e-mail were true as a matter of law. The lone defamation claim survived summary judgment merely because a 1902 Statute, M.G.L. c. 231, § 92 (the "Statute"), permits liability even for *true* statements if they are made with "actual malice." Thus the only issue for trial is whether Mr. Baitler sent the e-mail with "actual malice," defined by the First Circuit to mean ill will, hatred or actual malevolent intent toward Noonan. Noonan, who admits he has lost no income as a result of the e-mail and never saw a doctor for emotional distress, is claiming $3,000,000 in damages for alleged emotional distress and reputational harm arising out of the single, true e-mail.

**I.    SUMMARY OF THE EVIDENCE TO BE OFFERED BY STAPLES.**

The following is a concise summary of the evidence to be offered by Staples at trial.

**A.    Liability.**

Staples terminated Alan Noonan ("Noonan") in 2006 after an audit revealed that he had repeatedly and intentionally over-claimed travel expenses by thousands of dollars.

Noonan had worked for Staples since 1994, and had worked as a Regional Sales Director since 2000. Noonan worked in a group called North American Delivery in the Contract Division (the "Division"). Noonan had between 30 and 55 direct reports. The Executive Vice President for this Division was Jay Baitler ("Baitler").

Noonan's job required extensive travel around the country. Staples' employees used an online system called the "Ariba" system to process their expense reports for work travel. Staples had a Travel and Business Expense Policy, Credit Card Policy, and Code of Ethics that applied to all employees. Among other things, these policies required that employees submit accurate and honest expense reports. Noonan was responsible for submitting accurate expense reports and for training his own direct reports on travel reimbursements.

In December of 2005, Staples decided to conduct an audit of the expense reports of the Division. The Audit Department, including Audit Manager Mark Rosa, ran the audit, and selected 65 employees to audit. They chose all 35 employees who were Director level or above, including Noonan. They selected 15 lower-level employees randomly, and 15 employees based on suspect indicators on their reports, such as excessively large reports, a high number of round numbers, or the same total reimbursement requested multiple times.

The Audit Department instructed all of the auditees, including Noonan, to submit a specific expense report, with the supporting receipts. The Audit Department asked Noonan to submit a report for a trip that he had taken between May 2 and 6, 2005 to St. Louis, MO, Connecticut and Framingham, MA, for which he had been reimbursed $2,478.74. Noonan did so.

The Audit Department discovered that in the initial audited expense report ("Initial Audited Expense Report") Noonan had requested, and received, reimbursement that far exceeded the actual amount of his business expenses on the trip. Out of 13 line items, 8 had discrepancies, all of which were in Noonan's favor. For example, Noonan sought reimbursement for $1,129.00 for a McDonald's dinner that actually cost $11.29. He put in $492.70 for an airline ticket that actually cost exactly $100 less. He put in for $146.00 for car rental, when his actual car rental was $66.20. All told, he inflated his report by $1,622.63 and received that extra amount in his bank account. No other auditee's expense report had the same volume of discrepancies, by number or dollar amount, as Noonan's. In addition, he had used his personal credit card, not the corporate card, and booked his travel without using the designated travel agency.

Given the severity of the inflated expenses in the Initial Audited Expense Report, a Staples team investigated. The investigative team included (1) Audit Manager Mark Rosa, (2) Staples' Director of Loss Prevention for Corporate, NAD and Retail Distribution Robert McGrath ("McGrath"), a former police officer and private investigator; and (3) Doreen Nichols, the Director, Associate Relations and Diversity (collectively, the "Investigative Team").

On January 6, 2006, Noonan flew to Massachusetts to meet with the Investigative Team. Noonan admitted he couldn't explain the mistakes, and that he never should have submitted the report. The meeting was extraordinarily emotional for Noonan. He tried to claim that he "pre-populated," or guessed, at his expenses before a trip without ever going back to reconcile them after the trip. However, he could not explain how if he "guessed," a request was exactly $100

2

over the actual expense, or how he could have known the name and location of a particular gas station before the trip. When McGrath asked if there was a chance that other reports were inflated, Noonan said there was a "chance" they were. McGrath told Noonan he did not find his explanations credible and believed the anomalies were intentional and not mistakes. Noonan repaid the $1,622.63 in extra money he had improperly received from the Initial Audited Expense Report. Staples suspended him pending further investigation.

Staples then audited all 36 of Noonan's expense reports for 2005. These reports revealed *many* instances where he had requested, and received, reimbursement that exceeded his actual expense. The Investigative Team unanimously believed that the anomalies were intentional and not mistakes. In reaching that conclusion, the Investigative Team considered the high number and high dollar amount of the anomalies. They considered the fact that the large majority of "errors" favored Noonan. They considered that there were patterns, such as reimbursements exactly $100 or $200 over the actual expense for airfare, hotel, and car expenses, reimbursements exactly double the actual expense, and decimal points moved two places to the right. They did not believe Noonan when he claimed he simply did not notice that Staples was depositing thousands of extra dollars in his bank account.

In a joint decision made after consultation among McGrath, Nichols and Baitler, Staples determined that Noonan should be terminated for violating its Travel Policy, Credit Card Policy and Code of Ethics. They terminated him on January 19, 2006.

The next day, Baitler wrote, and asked his assistant to send, an e-mail to the group of approximately 1,500 Staples' employees within his Division, the same group that had been subject to the audit. The e-mail said:

> It is with sincere regret that I must inform you of the termination of Alan Noonan's employment with Staples. A thorough investigation determined that Alan was not in compliance with our T&E policies. As always, our policies are consistently applied to everyone and compliance is mandatory on everyone's part. It is incumbent on all managers to understand Staples policies and to consistently communicate, educate and monitor compliance every single day. Compliance with company policies is not subject to personal discretion and is not optional. In addition to ensuring compliance, the approver's responsibility to monitor and question is a critical factor in effective management of this and all policies.
>
> If you have any questions about Staples' policies or Code of Ethics, call the Ethics Hotline (1-888-490-4747) or ask your human resources manager.
>
> Jay G. Baitler
>
> EVP

This Court and the First Circuit have conclusively held that the statements in the e-mail were true as a matter of law.

Baitler sent the e-mail because he believed it was an important opportunity for the employees who worked for him to learn about the importance of complying with Staples' policies. He wanted to demonstrate that the policies were serious, and the company took them seriously. He did not believe that a generic e-mail that did not mention Noonan by name, and the fact of his termination, would have the same effect. He felt it was important to include everyone in his group on the e-mail – from employees who submitted expense reports, to supervisors who monitored and approved reports, to the administrative assistants who helped process the reports and were responsible for speaking up if they noticed fraud. The evidence will show that Staples had a practice of encouraging managers to prove employees with honest information about employees' misconduct, in order to promote an honest and ethical culture and discourage misconduct.

Baitler did not send the e-mail with actual malevolent intent, hatred or ill will toward Noonan. There was no animosity whatsoever between Baitler and Noonan. In fact, there was little relationship at all, given that Baitler was an Executive Vice President in the Framingham office responsible for 1500 people nationwide, and Noonan was a Director who worked from Florida and supervised only 30-55 people. To the extent he did know him, Baitler had a positive view of Noonan before discovering his violations. Further, the language of the e-mail itself shows there was no ill will. The e-mail itself consisted of a true statement of the simple fact that Noonan was terminated for the policy violations and a reminder of the importance of compliance with the policies. Even though Baitler knew that the investigation showed Noonan's violations to be deliberate and flagrant, Baitler did not say so in the e-mail.

  **B. Damages.**

Noonan has stipulated that he is not seeking any lost earnings damages as a result of the Baitler e-mail.[1] *See* Exhibit A, Stipulation No. 4 ("Mr. Noonan is not seeking lost income (i.e. back pay or front pay) as an element of his damages.)" Nevertheless, he insists he is seeking $3,000,000.00 in emotional distress and reputational harm damages.

However, Noonan cannot show that he suffered any actual damages from having his coworkers learn the truth about his termination for violating Staples' policies. That is, any emotional distress or reputational harm resulted from the mere fact of his termination – which he brought about *himself* by his deliberate and flagrant policy violations – not from the e-mail to coworkers about that termination.

Further, there is no compelling evidence in this case of any emotional distress or reputational harm *at all.* Noonan admits that he has only seen a doctor since his termination for

---

[1] In addition, Noonan did not allege in his Complaint or First Amended Complaint any economic damages, termed "special damages" in the libel context. He stipulated in his Response to Staples' Statement of Undisputed Facts at the summary judgment stage that he "will not be seeking post-termination compensation," except for severance benefits, which were denied as a matter of law by this Court and the First Circuit. He repeated in his Opposition to Staples' Motion to Compel Responses Before October Trial, filed August 21, 2009, that he is "not seeking lost income as an element of damages." Further, Noonan admits he did absolutely nothing to mitigate any such damages; in his supplemental interrogatory answers, in response to an Interrogatory (No. 13) that asked him to describe in detail all efforts he made to seek employment and/or income," Noonan responded, "I did not engage in the above referenced activities."

4

an annual physical, and has not sought any medical treatment, or taken any prescription medication, for emotional distress or reputational harm he claims occurred as a result of the e-mail. *See* Exhibit A, Stipulation No. 5 ("Since his termination, Mr. Noonan visited his physician for an annual physical, but did not otherwise visit a physician or other health provider, and has not been prescribed, or taken, any prescription medication."). He has brought forth no evidence of any specific reputational harm, and admits he is not even claiming that any reputational harm damaged his earnings.

There is no legal basis for Noonan's prayer in his Complaint for attorneys' fees.

## II.   FACTS ESTABLISHED BY PLEADINGS, STIPULATION OR ADMISSIONS OF COUNSEL.

The Stipulations agreed to and signed by the parties, filed September 10, 2009 at Docket No. 140, are attached as Exhibit A.

Staples also intends to offer into evidence Noonan's Responses to Staples' Requests for Admission, in which he admits, item by item, having submitted many inflated travel expenses to Staples for reimbursement.

## III.   CONTESTED ISSUES OF FACT.

The contested issues of fact are:

Has Alan Noonan proven that Jay Baitler sent the e-mail on January 20, 2006 with "actual malice," meaning a malicious intention, hatred or ill will, toward Alan Noonan?

Has Alan Noonan proven that he suffered actual damages, in the form of reputational harm, or emotional distress, that were caused by the e-mail sent by Jay Baitler on January 20, 2006?

## IV.   JURISDICTIONAL QUESTIONS.

Staples is not aware of any jurisdictional questions.

## V.   QUESTIONS RAISED BY PENDING MOTIONS.

In light of the parties' Stipulations filed on September 10, 2009, Staples has agreed not to seek the tax returns at issue in its Motion to Compel, Docket No. 123.

Staples also has pending a Motion for Protective Order to Prevent Plaintiff from Serving Harassing Trial Subpoenas on Staples' Lawyers and Executives, Docket Entry No. 127. Staples was forced to file this motion because Noonan plaintiff was threatening to send a constable to serve trial subpoenas on Staples' executives and lawyers who have no relevant and non-privileged information about this case. Noonan would not agree to the reasonable compromise repeatedly offered by Staples: that Staples would move in limine as to these irrelevant and privileged witnesses, and if the Court denied the motion, Staples would accept service of trial subpoenas for those witnesses who were current Staples employees. *After* forcing Staples to

5

incur the expense of filing a motion, Noonan filed a response essentially finally agreeing to this compromise.

## VI.    ISSUES OF LAW AND EVIDENTIARY ISSUES.

Staples states the outstanding issues of law as follows:

### A.    Did Baitler send the e-mail with "actual malice," under M.G.L. c. 231, § 92?

As discussed in detail above, there is no evidence that Baitler sent the e-mail with "actual malice" toward Noonan, defined as actual malevolent intent, hatred, or ill will. *Noonan v. Staples*, *Inc.*, 556 F.3d 20, 25, 28, 34, 35 (1st Cir. 2009); M.G.L. c. 231, § 92; *Noonan* v. *Staples*, *Inc.*, 539 F.3d 1, 9 n. 7 (1st Cir. 2008) (defining common law malice as in the "traditional sense of hatred or ill-will"), *withdrawn and substituted op. at,* 556 F.3d 20 (1st Cir. 2009). *See also Rotkiewicz v. Sadowsky,* 431 Mass. 748 (2000) ("actual malice" means defendant's hatred of, or ill will toward, the plaintiff.); *Hubbard* v. *Allyn*, 200 Mass. 166, 173 (1908) (can consider "language of the libel itself" regarding malevolence); *Conner* v. *Standard Pub'g Co.*, 183 Mass. 474, 480 (1903) (term means "malicious intention," "hatred" or "ill will"); *Fay* v. *Harrington*, 176 Mass. 270, 274 (1900) (an "actual malevolent intent" is required by the statute); *Brown* v. *Mass. Title Ins. Co.*, 151 Mass. 127, 128 (1890) (defining malice under predecessor statute as "malice in the popular sense of hatred or ill will); *Gilbert* v. *Bernard*, 1995 Mass. Super. Lexis 566, at *4 n.2 (1995) (statute requires proof of "malevolent intent or motive").

### B.    Has Alan Noonan proven that he suffered actual damages, in the form of reputational harm, or emotional distress, that were caused by the e-mail sent by Jay Baitler on January 20, 2006?

It is well-established that courts must exercise a "special duty of vigilance" in libel cases to ensure that the damages are no more than compensatory. *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 860 (1975). Noonan has stipulated he is not seeking economic harm damages, *see* Exhibit A, Stipulation No. 4, and in any event is not entitled to any because they are not pled in his First Amended Complaint. *See e.g., Tosti* v. *Ayik*, 394 Mass. 482, 496 (1985) (libel plaintiff may recover "any special damages he has suffered which have been pleaded and proved"); Fed. R. Civ. P. 9(g). He has not shown any specific reputational harm from the e-mail. *Compare Phelan* v. *May Dep't Stores, Inc.*, 443 Mass. 52, 58-9 (2004). He cannot show any distress or reputational harm that was caused by the e-mail as opposed to that caused by his own misconduct, Staples' discovery of that misconduct, and his termination. *See Soto-Lebron* v. *Fed. Express Corp.*, 538 F.3d 45, 59 & 64 (1st Cir. 2008) (need to distinguish between emotional distress and "damages that arise as a result of the mere fact that [plaintiff's] employment was terminated"). Noonan cannot recover attorneys' fees. *See Commonwealth* v. *Gonsalves*, 432 Mass. 613 (2000) ("Attorneys' fees and costs may be authorized only by court rule or statute").

### C.    Evidentiary Issues.

Staples has filed ten Motions in Limine to preclude Noonan from attempting to infuse the trial with irrelevant and prejudicial extraneous matters, as has been his pattern throughout the litigation. In particular, Staples has filed the following Motions in Limine, which are currently

pending with the Court:

    1. <u>Motion in Limine to Preclude Plaintiff from Challenging the Truth of the Baitler E-mail, or the Legitimacy of Plaintiff's Termination, and Request for An Appropriate Pre-Charge to the Jury (Docket No. 132).</u>  This motion argues that since the First Circuit has held the e-mail is true as a matter of law, Noonan should be precluded from challenging the truth of the e-mail.  Similarly, since the question of Noonan's termination is not before the jury, and the First Circuit held that Noonan violated the travel policy and Code of Ethics and was terminated "for cause," Noonan should be precluded from challenging the legitimacy of his termination or arguing that he somehow did not violate those policies.  Staples requests an appropriate pre-charge.

    2. <u>Motion in Limine to Preclude Plaintiff from Calling Certain Privileged Witnesses (Docket No. 128).</u>  This motion seeks to preclude Noonan from calling Staples' former and current in-house attorneys as witnesses, since they have no relevant and non-privileged information.

    3. <u>Motion in Limine to Preclude Plaintiff from Introducing at the Trial in this Matter Certain Evidence Concerning James Dorman's Criminal Indictment (Docket No. 131)</u>.  This motion seeks to exclude Noonan's proposed Dorman exhibits, with the exception of those to which Staples has stipulated (the indictment, press release and press clippings), to preclude Noonan from calling the incarcerated Dorman as a witness, and to limit the scope of evidence regarding Dorman to a narrow inquiry into Baitler's motive for sending the January 20, 2006 e-mail.

    4. <u>Staples' Inc.'s Motion in Limine to Preclude Evidence or Argument Regarding (i) Other Employees' Violations of the Travel Policy and (ii) Other Unrelated Employees' Separations from the Company (Docket No. 136).</u>  This motion seeks to exclude details of other employees' travel expenses or policy violations, and to preclude evidence of unrelated employees' separations from the company, including Leslie Prinz and Steve Mongeau.

    5. <u>Motion in Limine to Preclude Argument on, Evidence of, or Reference to, Plaintiff's Post-Termination Failure to Exercise Stock Options, Obtain Severance Pay or Receive Bonuses (Docket No. 137)</u>. This motion seeks to prevent Noonan from re-injecting his failed breach of contract claims into the case by putting the issues of stock options, severance or bonuses before the jury.

    6. <u>Motion in Limine to Preclude Noonan from Calling Certain Wholly Irrelevant Witnesses (Docket No. 134)</u>.  This motion seeks to preclude Noonan from calling irrelevant witnesses including Mr. Light, Mr. Sargent, Mr. Davis, Mr. Floek, Mr. Gaffney, Mr. Fickle, and Mr. Lastoff.

    7. <u>Motion in Limine to Preclude Noonan from Introducing Evidence Regarding Unrelated and Wholly Irrelevant Staples Litigation (Docket No. 133)</u>.  This

motion seeks to preclude Noonan from introducing evidence regarding unrelated Staples litigation on the grounds that it is both irrelevant and more prejudicial than probative.

8.  <u>Motion in Limine to Preclude Evidence Regarding Deletion of Electronic Version of E-mail (Docket No. 130)</u>.  This motion seeks to preclude Noonan from introducing evidence of the deletion of the electronic version of the e-mail on the grounds that it is both irrelevant and more prejudicial than probative.

9.  <u>Motion in Limine to Preclude Argument on, Evidence of, or Reference to, Other Codes of Ethics (Docket No. 129)</u>.  This motion seeks to preclude Noonan's argument that there are somehow different versions of the Code of Ethics, and to preclude him from entering into evidence a Code of Ethics dated after Noonan's termination that was an exhibit in an unrelated litigation.

10.  <u>Motion in Limine to Preclude Argument on, Evidence of, or Reference to, Plaintiff's Wife's Miscarriage (Docket No. 135)</u>.  This motion seeks to preclude evidence of Mrs. Noonan's miscarriage on grounds including that it was not timely disclosed, that it is not relevant because she is not a plaintiff and cannot show causation and that it is more prejudicial than probative.

**D.    Constitutionality Issues.**

Staples respects the Court's ruling that it will not take up the constitutionality issues on the grounds that the Court believes that such issues are foreclosed by the First Circuit's mandate. Staples includes the issues in this Pre-trial Memorandum simply in order to preserve all rights on the issue.  This case raises the following two legal issues:

Is an indisputably true e-mail sent by an employer to a group of 1,500 employees, advising employees that a former employee had been terminated for violating certain policies and reminding employees of the importance of compliance with those policies, of "public concern," under *Shaari v. Harvard Student Agencies,* 427 Mass. 129 (1998), which held that M.G.L. c. 231, § 92 is unconstitutional at least as applied to statements of "public concern?"

Is M.G.L. c. 231, § 92 an unconstitutional infringement on the right to free speech, under the First Amendment to the United States Constitution, or art. 16 of the Massachusetts Declaration of Rights, to the extent that it would impose liability for a truthful statement by an employer about an employee's termination to co-workers?

Staples refers to its Dispositive Motion for a Ruling of Law that M.G.L. 231 § 92 (the "Statute") is Unconstitutional in Its Entirety and as Applied in This Case for a complete argument as to why the Statute is unconstitutional both on its face and as applied in this case.

**VII.   REQUESTED AMENDMENTS TO THE PLEADINGS.**

Staples renews its request to Amend its Answer to Noonan's First Amended Complaint to add three additional affirmative defenses regarding the Statute.  In a ruling issued on August 6, 2009, the Court allowed Staples to add one affirmative defense, but denied the request with

8

regard to the following three affirmative defenses:

1.      M.G.L. c. 231 § 92 is unconstitutional under the First Amendment to the United States Constitution and art. 16 of the Declaration of Rights of the Massachusetts Constitution. Truth is an absolute defense to libel.

2.      The statements that Noonan claims were defamatory were of public concern, and thus application of M.G.L. c. 231 § 92 to those statements is unconstitutional under *Shaari* v. *Harvard Student Agencies, Inc.*, 427 Mass. 129 (1998).

3.      Plaintiff is not entitled to any damages under M.G.L. c. 231 § 92.

While Staples understands that this Court has ruled that the mandate from the First Circuit prohibits this Court from ruling on whether the Statute is unconstitutional on its face, or as applied here, Staples nonetheless respectfully requests leave to add the affirmative defenses to its Answer so as to reserve its rights. Particularly given the serious constitutional infirmities with the Statute, and the fact that Noonan did not even raise the issue of M.G.L. c. 231, § 92 until his opposition to Staples' summary judgment motion, justice requires that Staples be granted leave to amend its answer to add these defenses.

**VIII.    ADDITIONAL MATTERS TO AID IN DISPOSITION OF TRIAL.**

Staples requests a limiting instruction from the Court, to be read to the jury at the outset of trial, advising the jury that the statements in the e-mail have been held by this Court and the United States Court of Appeals for the First Circuit to be true as a matter of law. The requested Pre-Charge is attached as Exhibit A to Staples' Motion in Limine to Preclude Plaintiff from Challenging the Truth of the Baitler E-mail, or the Legitimacy of Plaintiff's Termination, and Request for An Appropriate Pre-Charge to the Jury (Docket No. 132).

Staples wishes to alert the Court and the Plaintiff that Mark Rosa, the Audit Manager who ran the audit that uncovered Noonan's overstatements of his travel expenses, will be traveling out of the country for the week of October 12, 2009. Mr. Rosa is available the week of trial, the week of October 5, 2009, and Staples has advised Noonan that it will accept service of a trial subpoena on his behalf.

**IX.    PROBABLE LENGTH OF TRIAL.**

Staples expects the jury trial to last approximately 6 days.

**X.    WITNESSES.**

    **A.    Witnesses Staples Intends to Call.**

Staples intends to present the following fact witnesses at trial, listed here in alphabetical order:

Sue Bailey
Executive Assistant to Jay Baitler
Staples, Inc.
500 Staples Drive
Framingham, Massachusetts 01702
508-253-5000

Jay Baitler
Executive Vice President, NAD Contract Division
Staples, Inc.
500 Staples Drive
Framingham, Massachusetts 01702
508-253-5000

Robert McGrath
Vice President, Asset Protection for Corporate and NAD
Staples, Inc.
500 Staples Drive
Framingham, Massachusetts 01702
508-253-5000

Doreen Nichols
Vice President, Associate Relations and Global Diversity
Staples, Inc.
500 Staples Drive
Framingham, Massachusetts 01702
508-253-5000

Alan S. Noonan
740 Bluebird Lane
Plantation, FL 33324

Mark Rosa
3 Bluebird Drive, Apt. 44
South Grafton, MA 01560
Phone Number Unknown

Nan Stout
Vice President of Business Ethics
Staples, Inc.
500 Staples Drive
Framingham, Massachusetts 01702
508-253-5000

     **B.**    **Witnesses Staples May Call.**

Staples may call the following fact witnesses if the need arises, listed here in alphabetical order:

K. Scott Barron
Regional Vice President, SBA Sales
Staples, Inc.
1640 Phoenix Blvd.
Atlanta, GA 30349

Susan Hoyt
1 Fairfield Street
Boston, MA 02116

Patrick Lacchia
V.P., Internal Audit
Staples, Inc.
500 Staples Drive
Framingham, Massachusetts 01702
508-253-5000

John B. Newman
Vice President of Strategic Sourcing
Staples, Inc.
500 Staples Drive
Framingham, Massachusetts 01702
508-253-5000

Bruce Szypot
V.P. of Human Resources for NAD
Staples, Inc.
500 Staples Drive
Framingham, Massachusetts 01702
508-253-5000

Staples reserves the right to supplement this witness list as necessary up to and including the time of trial. Staples reserves the right to call any witness listed by any party in the Pretrial Memorandum, Initial Disclosures, or in Answers to Interrogatories, and such additional unlisted witnesses as are necessary to respond to or rebut testimony by listed witnesses, to impeach the credibility of listed witnesses, or to lay the foundation for the introduction of documents.

**XI.    PROPOSED EXHIBITS.**

Attached as Exhibit B is a joint exhibit list, filed by the parties September 10, 2009, at Docket No. 141, that includes both stipulated exhibits, and a list of additional exhibits that Staples intends to present that are disputed by Noonan. Staples reserves the right to enter into evidence such additional unlisted documents as are necessary to respond to or rebut testimony by any trial witness, to impeach the credibility of any trial witness, to respond to or rebut exhibits entered by the other parties, or to lay the foundation for the introduction of listed exhibits.

11

**XII.    STAPLES' OBJECTIONS TO EVIDENCE IDENTIFIED IN PRE-TRIAL DISCLOSURES.**

Attached as Exhibit C is Staples, Inc.'s Objections to Certain of Plaintiff's Witnesses and Exhibits.

Respectfully submitted,

STAPLES, INC.,
By its attorneys,

/s/ Lynn Kappelman
Lynn Kappelman (BBO No. 642017)
Dawn Solowey (BBO No. 567757)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane
Suite 300
Boston, MA 02210-2028
Telephone:    (617) 946-4800
Telecopier:    (617) 946-4801
lkappelman@seyfarth.com
dsolowey@seyfarth.com

Dated:  September 10, 2009

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 10, 2009.

/s/ Lynn Kappelman