# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

------------------------------------x
ALAN S. NOONAN,         :

      Plaintiff,    :

                :

v.                    :      Civil Action No. 06-10716-WGY

                :

STAPLES, INC.,        :

                :

      Defendant.   :
------------------------------------x

## PLAINTIFF'S PRETRIAL MEMORANDUM

Pursuant to Procedural Order Re: Final Pretrial Conference/Trial dated August 5, 2009, plaintiff Alan S. Noonan ("Noonan") hereby submits his pretrial memorandum.[1]

**1.  A concise summary of the evidence that will be offered by Noonan.**

Noonan's Summary as to Liability

Noonan was employed by defendant Staples, Inc. ("Staples") as a sales person in 1994.  In 2000, he was promoted to Regional Sales Director, and remained in that position until his employment with Staples was terminated in January 2006.  However, on December 22, 2005, Noonan was notified of his promotion to Director, Inside Sales, which was to be effective January 30, 2006.  Noonan's promotion was announced by Staples to his fellow employees.

On January 20, 2006, Jay Baitler ("Baitler"), the Executive Vice President responsible for Staples' NAD Contract division ("the Division"), had his assistant, Sue Bailey ("Bailey"), transmit an email to **at least** 1500 employees in the Division who were on a distribution list

---

[1] The witness list and exhibits set forth below are also set forth in Plaintiff Alan S. Noonan's First Amended Pretrial Disclosures (Docket No. 139).

called "Contract Remote" and at least an additional 120 employees at their individual email addresses ("the Baitler Email").

The Baitler Email states as follows:

> It is with sincere regret that I must inform you of the termination of Alan Noonan's employment with Staples. A thorough investigation determined that Alan was not in compliance with our T&E policies. As always, our policies are consistently applied to everyone and compliance is mandatory on everyone's part. It is incumbent on all managers to understand Staples policies and to consistently communicate, educate and monitor compliance every single day. Compliance with company policies is not subject to personal discretion and is not optional. In addition to ensuring compliance, the approver's responsibility to monitor and question is a critical factor in effective management of this and all policies.
>
> If you have any questions about Staples' policies or Code of Ethics, call the Ethics Hotline (1-888-490-4747) or ask your human resources manager.
>
> Jay G. Baitler
>
> EVP

Noonan learned of the Baitler Email when he received a hard copy by mail in an anonymous unmarked envelope.

After the Baitler Email was sent, Bailey, pursuant to Mr. Baitler's instructions, forwarded the Baitler Email to the following senior persons at Staples: Ron Sargent ("Sargent"), Joe Doody, Patrick Lacchia, Mark Rosa, Bruce Szpot, Doreen Nichols ("Nichols") and Cindy Westervelt ("Westervelt").

Staples did not retain an electronic or hard copy of the Contract Remote list as it existed on January 20, 2006.

Staples did not retain electronic versions of the Baitler Email despite receiving a preservation notice to do so.

2

The original version of the Baitler Email was deliberately deleted from the "sent," "received," and "deleted" email folders contained in Bailey's email mailboxes.

The only electronic copy of the Baitler Email preserved by Staples and its employees resides in the email mailbox of Westervelt who is an attorney in Staples' Legal Department. The electronic copy of the Baitler Email residing in Westervelt's email mailbox was forwarded to her by Baitler. Westervelt and Scot Plotnick, another attorney in Staples' legal department, assumed the legal responsibility for notifying recipients of the Baitler Email of their obligation to retain it in electronic form, and for implementing reasonable measures so that they would do so. Because it did not preserve any electronic copies of the Baitler Email except for the one received and maintained by Westervelt, Staples cannot verify whether any Staples employees who received the Baitler Email forwarded the Baitler Email to other email addresses at Staples or whether any recipient of the email forwarded it to anyone outside of Staples.

Staples maintains that the Baitler Email named Noonan and was widely disseminated for the purpose of "educating" employees within the Division as to the importance of complying with Staples' Travel and Expense Policy ("the Policy"). However, this explanation is a pretext.

In fact, the Baitler Email was the product of Baitler's malice. Examples of evidence which Noonan will offer at trial are as follows:

- At the time the Baitler Email was sent, Baitler was angry that those within the Division were not complying with the Policy.

- Staples' policy and practice is to maintain the confidentiality of its employees' information. For example, Staples' Code of Ethics states: "Our associates' personal records are confidential, and we limit access on a **need-to-know basis**." (emphasis added.)

3

- The Baitler Email is the only instance where Staples **named** an employee and stated the reasons for his termination in a widely published email.

- Staples' practice was to enter into confidentiality agreements with the employees it terminated (for example, with an employee who had falsified information to a large Staples university customer).

- Staples did not "educate" its employees when it entered into a consent decree with the United States of America which Baitler executed in a False Claims Act proceeding.

- At the time of the Baitler Email, Baitler was concerned about a large embezzlement perpetrated James Dorman ("Dorman"). Baitler approved Dorman's expense reports. Dorman is currently incarcerated.

- Baitler did not send an email about Dorman's conduct. Noonan, based on the public statements by Owen Davis of Staples' public relations department, maintains that the Baitler Email was originally intended to address Dorman's conduct. However, Baitler was not permitted to send it. Evidence which would support Noonan's position - - the electronically stored information associated with the Baitler Email - - has been spoliated by Staples.

- Baitler admits that the Dorman incident prompted him to send the Baitler Email. He wanted to give NAD employees a "wake-up call." Baitler's real motive was not to educate, but rather to protect himself. He was ultimately responsible for implementation of the Policy within the Division. The practice within NAD was to deviate from the Policy. Baitler used Noonan - - an exemplary employee who had just been promoted - - as a scapegoat to put the fear of God into those at NAD in order to defend his own conduct.

4

- Bailey forwarded the Baitler Email to Sargent - - Staples' CEO - - and Westervelt - - Staples' in house counsel - - **after** sending it to over 1600 employees. If the real motive had been to educate employees, presumably Sargent and Westervelt as well as the other senior executives to whom the Baitler Email was forwarded would have been on the original email in order to demonstrate to the Division's employees the importance of following the Policy. Rather, Baitler forwarded the email because he knew the Policy was not being followed and that sending the Baitler Email was not proper.

- Baitler maintains that he read the Baitler Email to Nichols from Staples' Human Resources Department before it was sent. Nichols maintains that Baitler did not do so.

- Nan Stout, a Staples lawyer who served as its Ethics Officer, encouraged senior leaders at Staples (including Sargent) to provide their **staff** with truthful information about misconduct. The Baitler Email was disseminated to numerous employees who were not within the narrow group who shared an interest in the communication (e.g. administrative assistants who under the Policy were not permitted to prepare and submit expense reports and employees who did not travel).

- Excessive publication may constitute malice, and in this case it certainly does.

<u>Noonan's Summary as to Damages</u>

Noonan has suffered damages for loss of reputation, humiliation and mental anguish and suffering resulting from the defamatory email sent out by Jay Baitler, the Executive Vice President of Staples. Moreover, his humiliation and emotional distress has intensified by not knowing or ever being able to discover (as a result of Staples' destruction of the email) who within and outside of Staples received the Baitler Email about his termination. Consequently, Noonan is humiliated and embarrassed every time he speaks to colleagues because he does not

know whether they received a copy of the Baitler Email. From the time of his termination from Staples, Noonan has suffered emotional distress which has physically manifested itself in the following ways:

- he has headaches on a continual basis;

- he experiences tension headaches on a daily basis;

- he has difficulty concentrating and reading on a continual basis;

- he suffers from sleeplessness on a continual basis;

- he has gastrointestinal distress on a continual basis and take Zantac and Rolaids consistently to help ease this distress;

- he has an upset stomach on a continual basis;

- he has feelings of despair on a continual basis;

- he has difficulty working as a result of the aforementioned harm I have suffered;

- he has an overall "lousy" feeling on a continual basis;

- he experiences overwhelming fear with respect to my ability to provide and care for my family on a continual basis;

- he experiences mental anxiety and anguish on a continual basis;

- he experiences melancholia and feel generally "down" on a continual basis; and

- he continuously has thoughts as to why Staples harmed him.

Additionally, his wife Michele has suffered significant emotional distress from the manner in which he was treated by Staples. She learned that she was pregnant with their second child on or about the day that Noonan was terminated from Staples, and shortly thereafter, she suffered a miscarriage which has devastated Noonan's family deeply. His wife's sleeping patterns and emotional temperament have not been the same since the time the Baitler Email was

6

sent out about him. The incident has placed a huge emotional strain on his wife who has

personally observed the humiliation, mental anguish, and loss of reputation Noonan has

experienced as a result of the Baitler Email being sent. Noonan has suffered significant

emotional distress as a result of observing his wife suffering. In addition, Noonan's daughter is

aware that his experience with Staples has caused a lot of pain to his family, and it troubles him

enormously to know that she has that kind of understanding of the situation. His emotional

distress from observing the effects of the Baitler Email have and continue to impact him

significantly as described above.

Noonan has not consulted a medical health professional concerning my emotional

distress. Additionally, Noonan has not been prescribed nor does he take any medications as a

result of the emotional distress he has suffered, but he does take Zantac and Rolaids often on a

daily basis.

## 2. A statement of facts established by the pleadings, by admissions or by stipulation.

The parties are submitting concurrently with their pretrial memoranda a separate

document entitled "Stipulation of the Parties."

## 3. Contested issues of fact.

It is Noonan's position that the trial of this matter centers on the following issues of fact:

- What were Staples' policies regarding confidentiality of information about its

  employees?

- Did Baitler act with actual malice when Bailey, his assistant, on January 20, 2006 sent the

  Baitler Email on his behalf pursuant to his instruction to more than 1500 Staples

  employees naming Noonan?

- Was the Baitler Email true in all respects (e.g. compliance is mandatory on everyone's part) which is relevant to malice?

- What was Baitler's motive when the Baitler Email was sent (e.g. self-protection regarding the Dorman theft since Dorman reported to him)?

- Was the real motive of the Baitler Email to serve as the method for educating Staples' employees about the Policy (e.g. if so, why did Baitler have to name Noonan; why did he not send out an email about the false claims act cases and the activities of other employees)?

- Was the Baitler Email excessively published?

- Which Staples Code of Ethics did Baitler consult at the time the Baitler Email was sent?

- Why did Baitler have Bailey forward the Baitler Email to Sargent, Doody, Lacchia, Rosa, Szypot, Nichols and Westervelt rather than include them on the original mailing?

- What were the circumstances of the destruction of the electronic versions of the Baitler Email (e.g. Plotnick and Westervelt hold notices; transmission of the only electronic version of the email from Baitler to Westervelt; deletion of the Baitler Email from Bailey's "Sent," "Received," and "Delete" files)?

- What are the consequences of the destruction of the electronic versions of the Baitler Email (e.g. was it a draft of an email about Dorman that was never sent; how does Noonan know whether it was forwarded to others within Staples and by persons within Staples to those outside of Staples)?

- What are Noonan's damages as a result of the Baitler Email?

4. **Any jurisdictional issues.**

   None.

8

**5. Any questions raised by pending motions.**

Staples filed ten (10) motions in limine (Docket Nos. 128-137). Noonan will respond to the motions in limine on or before September 15, 2009.

**6. Issues of law, including evidentiary questions, together with supporting authority.**

Issues of Law

- "A statement is defamatory if it 'may reasonably be read as discrediting [the plaintiff] in the minds of a considerable and respectable class of the community." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009)(quoting *Disend v. Meadowbrook Sch.*, 33 Mass. App. Ct. 674 (1992)) (hereinafter, "Noonan Appellate Decision").

- "Statements suggesting that one lacks a necessary professional characteristic are defamatory." *Reilly v. Associated Press*, 59 Mass. App. Ct. 764, 778 (2003).

- "… [U]nder Massachusetts law, even a true statement can form the basis of a libel action if the plaintiff proves that the defendant acted with 'actual malice.'" Noonan Appellate Decision at 28.

- ". . . Mass. Gen. Laws ch. 231, § 92 means 'common-law malice' when it uses the term 'actual malice.'" Noonan Appellate Decision at 29-30.

- The term "actual malice" refers to actual malevolent intent or ill will. Noonan Appellate Decision at 28-29.

- "[A] jury could . . . conclude that Baitler's explanation for the deviation from [Staples'] policy was pretextual." Noonan Appellate Decision at 30.

- If it rejects Baitler's explanation of why the Baitler Email was sent, the jury's conclusion "might lend further support to an inference of malicious intent." Noonan Appellate Decision at 30.

- Excessive publication can show malice sufficient to defeat a conditional privilege. Noonan Appellate Decision at 31.

- A base ulterior motive can constitute malice. Noonan Appellate Decision at 31 (citing *Dragonas v. Sch. Comm. of Melrose*, 833 N.E. 2d 679, 687 (Mass. App. Ct. 2005).

- Intention to injure another can constitute malice. Noonan Appellate Decision at 31 (citing *Dragonas v. Sch. Comm. of Melrose*, 833 N.E. 2d 679, 687 (Mass. App. Ct. 2005).

- Publication should only be made to the "'narrow group who shared an interest in the communication.'" Noonan Appellate Decision at 31) (quoting *Draghetti v. Chmieliwski*, 626 N.E.2d 862, 867 (Mass. 1994).

- A conditional privilege is defeated by a showing of malice. Noonan Appellate Decision at 31.

- Actual injury includes impairment to the plaintiff's reputation and standing in the community, personal humiliation, shame and disgrace, and mental suffering. See *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 861 (1975).

- Recovery for mental suffering can be had even though no damage to reputation is involved. *Curley v. Curtis Publishing Co.*, 48 F. Supp. 27, 28 (D. Mass, 1942).

- Plaintiff's emotional stress "need be no more than 'outrage' or 'anger' upon seeing the libelous statements, …, since mental distress is the 'natural result of libel.'" *Fiori v. Truck Drivers, Local 170*, 354 F. 3d 84, 87 (1st Cir. 2004)(quoting *Shafir v. Steele*, 431 Mass 365 (2000)).

10

- A plaintiff can prove mental suffering and humiliation by simply testifying as to his feelings. *Shafir v. Steele,* 431 Mass. 365, 373 (2000)(stating feelings of being "bludgeoned, "stunn[ed]" and outraged as a result of the defamation was sufficient to prove mental suffering).

- "[P]ersonal humiliation and mental anguish are compensable even though their translation into money damages is necessarily imprecise." *Tosti v. Ayik,* 400 Mass. 224, 228-29 (1987).

- "Defamatory statements that harm a plaintiff's profession or business reputation are actionable without proof of economic loss." *White v. Blue Cross and Blue Shield of Massachusetts,* 442 Mass. 64, 69 n.10 (2004).

<u>Evidentiary Issues</u>

Noonan intends to file a motion in limine requesting the Court at the commencement of the trial to exclude evidence relating to whether Noonan falsified his expense reports except to the extent of what Baitler knew at the time the Baitler Email was transmitted.  In his motion, Noonan will also request the Court to instruct the jury at the commencement of the trial that Noonan and Staples dispute whether he deliberately falsified his expense reports, that issue has not been adjudicated and is not an issue the jury is permitted to discuss, deliberate or decide during the course of this trial, and the only issue for the jury is whether the Baitler Email was sent with actual malice even if it were true.

Noonan also intends to file a motion in limine prohibiting Staples from introducing evidence, arguing or otherwise raising as an issue at trial that Noonan's termination was a matter of public concern.

Furthermore, intentional or negligent spoliation of evidence warrants court sanctions. However, as a general rule, the judge should impose the least severe sanction to remedy the prejudice caused to the non-spoliating party. See Hon. William G. Young et al., "Evidentiary Standard 1103: Spoliation of Evidence," *Massachusetts Practice Series*, 20 Mass. Prac., Evidence St. 1103 (2d ed.) (current through 2008 pocket part). Notably, the United State Court of Appeals for the First Circuit stated the following in *Noonan v. Staples*, 556 F.3d 20, 31 [FN 12] (1st Cir. 2009):

> Noonan contends that Staples improperly deleted the original electronic version of the e-mail despite Noonan's lawyer's written request. According to Noonan, this deletion made it impossible to determine exactly who was on the list and how many people the list included. Noonan contends that the e-mail's deletion raises a permissible inference that the destroyed evidence shows excessive publication. We need not reach the issue of the destruction of the e-mail at this time, since the summary judgment record already establishes that the e-mail was widely distributed. As noted above, whether that distribution was so wide as to show malice will be a question for the jury.

Noonan will be filing his opposition to Staples' *Motion in Limine to Preclude Evidence Regarding Deletion of Electronic Version of Email* when it is due (September 15, 2009). The Court denied Noonan's sanctions motions found at Docket Nos. 31 and 61 (which rulings Noonan objects to). However, denial of pretrial sanctions does not preclude the Court from utilizing its inherent powers to issue an adverse inference instruction to the jury concerning the deletion of the Baitler Email by Staples.

As discussed in Section 1 above, the destruction of the electronic versions of the Baitler Email including meta data bears on the following issues as trial: (1) who actually received the Baitler Email when it was initially sent (i.e. who was on the Contract Remote List); (2) whether the Baitler Email was forwarded by the numerous recipients to others within Staples, and whether anyone sent it beyond Staples; and (3) whether the Baitler Email was related to Dorman.

Notably, in *Defendant's Opposition to Plaintiff's Motion for Discovery Sanctions for Spoliation of Electronic Evidence* (Docket No. 41), Staples makes the following assertion: "To the extent that Staples should have preserved the original e-mail in electronic form, its destruction of the e-mail was the result of inadvertent action by an administrative assistant." However, Staples has never explained **why** the only electronic version of the Baitler Email was the one that ***Baitler*** -- not Bailey -- sent to Westervelt. That version of the email does not contain the meta data necessary to address the above issues. In fact, it is obvious that Bailey's copies of the Baitler Email were deliberately spoliated since separate acts were necessary in order to delete the email from her "send," received," and "deleted" files.

Staples received a timely preservation notice from Noonan and had document retention policies in place which would have made electronic versions available to Noonan had they not been spoliated. Staples  never offered evidence as to whether it took reasonable efforts to preserve the electronic versions of the Baitler Email, and to explain the circumstances of the destruction of these versions of the email. Quite simply, Staples cannot show that it acted in good faith in order to meet its legal obligations to preserve the Baitler Email in its electronic formso that Noonan could determine the extent of its distribution.

The United State Supreme Court established long-settled legal precedent concerning the Court's inherent power to correct prejudice caused by spoliation of evidence. See *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1997) (holding that ***sanctions available under the Federal Rules of Civil Procedure do not displace or supersede the inherent power of a court to sanction bad faith conduct***). In Massachusetts, there is no independent private right of action in tort for spoliation of evidence; therefore, in order to ensure due process, it is crucial that the Court determine a claim for spoliation, inasmuch as "[a ] judge  has the discretion to impose sanctions

13

for the spoliation or destruction of evidence, whether negligent or intentional, in the underlying action in which the evidence would have been offered." See *Massachusetts Guide to* Evidence, "Section 1102. Spoliation or Destruction of Evidence" (Flaschner Judicial Institute) (2008-09 ed.).

Noonan submits that the jury should be instructed that destruction of the electronic versions of the Baitler Email, including any electronically stored information relating to the trail of its dissemination, makes it impossible to determine the true number of recipients of the email transmission both within Staples and beyond the corporation. Therefore, the deletion of the electronic version of the Baitler Email should be considered by the jury as an element constituting evidence of malice. The fact that Staples received a preservation letter from Noonan's counsel well within the timeframe of Staples' email deletion cycle, and that the Baitler Email was forwarded to Westervelt in the Legal Department but otherwise deleted is probative of Staples' desire to "cover something up," (e.g., the emails link to the Dorman matter) and therefore, implies a consciousness of guilt. See *U.S. v. Gonsalves*, 668 F.2d 73, 75 (1st Cir. 1982) (citing 2 Wigmore on Evidence §§ 273-77 (Chadbourne Revision 1979)); see also *Keene v. Brigham & Women's Hosp., Inc.*, 439 Mass. 223 (2003) (courts should impose least severe sanction necessary to remedy the prejudice to the non-spoliating party); *Fletcher v. Dorchester Mut. Ins. Co.*, 437 Mass. 544, 551(2002) ("[S]anctions for spoliation are carefully tailored to remedy the precise unfairness occasioned by that spoliation. A party's claim of prejudice stemming from spoliation is addressed within the context of the action that was allegedly affected by that spoliation.").

The issues Noonan raises for trial are those which the First Circuit asked this Court to consider in Footnote 12 of its opinion. *Noonan v. Staples*, 556 F.2d 20, 31 [FN 12] (1st Cir.

14

2009).  A judge may instruct the jury on the inferences that may be drawn from spoliation of evidence.  See Gath v. M/A-Com, Inc., 440 Mass. 482 (2003).  Noonan respectfully **objects** to the Court's summary denial of Noonan's sanctions motions (Docket Nos. 31 and 61), and respectfully requests this Court address the destruction of the Baitler Email at trial.  Failing to adjudicate the merits of Noonan's spoliation claim concerning the destruction of the Baitler Email will continue to reward Staples for its disregard of applicable court rules and law.  In addition, ignoring the gravity of the Baitler Email's destruction establishes poor legal precedent for future litigants before this Court -- especially where courts in other jurisdictions strictly enforce breaches of preservation of evidence duties that compromise a litigant's case.  Fed. R. Civ. P. 37(e); see Zubulake v. UBS Warburg LLC ("Zubulake IV"), 220 F.R.D. 212 (S.D.N.Y., October 22, 2003) (ordering sanctions against defendant for violating its duty to preserve evidence); Zubulake v. UBS Warburg LLC ("Zubulake V"), 2004 WL 1620866 (S.D.N.Y., July 20, 2004) (explaining, among other issues, counsel's duty to effectively communicate to her client its discovery obligations to ensure information is discovered, retained, and produced).

Noonan respectfully submits that this Court's summary denial of Noonan's sanctions motions that were pending on this Court's docket for over two (2) years without explanation in addition to the subsequent exclusion of Noonan's expert -- whose report has been docketed for over two years -- does not fairly and adequately address the prejudice  Staples' spoliation of evidence has caused to Noonan's claims. See Hon. William G. Young et al., "Evidentiary Standard 1103: Spoliation of Evidence," Massachusetts Practice Series, 20 Mass. Prac., Evidence St. 1103 (2d ed.) (current through 2008 pocket part).

If Douglas M. Herman, Noonan's expert witness, is precluded from testifying at trial, Noonan will preserve his rights of appeal by making an offer of proof at trial.

15

**7. Any requested amendments to the pleadings.**

   None.

**8. Any additional matters to aid in the disposition of the action.**

   None.

**9. The probable length of trial and whether jury or nonjury.**

   Five (5) days.

**10. A list of the names and addresses of witnesses who will testify at trial and the purpose**

**of the testimony.**

   <u>Noonan's Fact Witnesses</u>

   Sue Bailey
   Executive Assistant to Jay Baitler
   Staples, Inc.
   500 Staples Drive
   Framingham, MA 01702
   508-253-5000

   Jay G. Baitler
   Executive Vice President, NAD
   Staples, Inc.
   500 Staples Drive
   Framingham, MA 01702
   508-253-5000

   Owen Davis
   Corporate Media Relations
   Staples, Inc.
   500 Staples Drive
   Framingham, MA 01702
   508-253-5000

   Brent Fickle
   6927 Saint Minians
   Lewis Center, Ohio 43035
   614-746-6254

16

Scott Floek
Nuance Communications, Inc.
1 Wayside Road
Burlington, MA 01803
781-565-5000
(Former Vice President, Senior Vice President, CIO, Information Systems for Staples, Inc.)

Susan Hoyt
1 Fairfield Street
Boston, MA 02116

Patrick Lacchia
Vice President, Internal Audit
Staples, Inc.
500 Staples Drive
Framingham, MA 01702
508-253-5000

John B. Newman
Vice President of Strategic Planning
Staples, Inc.
500 Staples Drive
Framingham, MA 01702
508-253-5000

Paul Lastoff
168 Old Gage Hill Road
Pelham, NH 03076
617-549-3583

Brian T. Light
Chief Information Officer
Staples, Inc.
500 Staples Drive
Framingham, MA 01702
508-253-5000

Robert McGrath
Vice President, Asset Protection for Corporate and NAD
Staples, Inc.

17

500 Staples Drive
Framingham, MA 01702
508-253-5000

Steven Mongeau
11 Danforth Lane
Chelmsford, MA 01824
Telephone Number Unknown to Plaintiff

Doreen Nichols
Vice President, Associate Relations and Global Diversity
Staples, Inc.
500 Staples Drive
Framingham, MA 01702
508-253-5000

Alan S. Noonan
740 Bluebird Lane
Plantation, FL 33324

Michelle Noonan
740 Bluebird Lane
Plantation, FL 33324

Scot Plotnik, Esquire
Assistant General Counsel, Labor Relations
Staples, Inc.
500 Staples Drive
Framingham, MA 01702
508-253-5000

Leslie Prinz
153 Green Road
Bolton, MA 01740
978-779-0760

Mark Rosa
3 Bluebird Drive, Apt. 44
South Grafton, MA 01560

David Santana
3173 Hartridge Terrace
Wellington, FL 33414
561-452-0919

Ronald L. Sargent
Chief Executive Officer
Staples, Inc.
500 Staples Drive
Framingham, MA 01702
508-253-5000

Nan Stout
Vice President of Business Ethics
Staples, Inc.
500 Staples Drive
Framingham, MA 01702
508-253-5000

Jack VanWoerkom, Esquire
General Counsel
Home Depot, Inc.
2455 Paces Ferry Road
N.W. Atlanta, GA 30339
Phone: (770) 433-8211
(former General Counsel for Staples, Inc.)

Paul Gaffney
Desktone, Inc.
100 Apollo Drive
Chelmsford, MA 01824
866-691-5660
(former Chief Information Officer for Staples, Inc.)

<u>Noonan's Expert Witness</u>

Douglas M. Herman[2]
UHY Advisors, FLVS, Inc.
30 South Wacker Drive, Suite 2850
Chicago, Illinois 60606
312-578-9600

---

[2] Noonan reserves all rights he has with respect to Herman, including making a live offer of proof. <u>See</u> Docket No. 120 - - *Plaintiff Alan S. Noonan's Objection to the Court's Order Entered on July 27, 2009 Allowing Defendant Staples, Inc.'s Motion to Strike Plaintiff's Expert Disclosure on the Basis that the Disclosure Was Untimely and His Offer of Proof.*

Noonan reserves the right to call additional unlisted witnesses as is necessary to respond to or rebut testimony by witnesses listed by Staples or him, to impeach the credibility of listed witnesses, or to lay the foundation for the introduction of documents or any other evidence.

**11. A list of proposed exhibits.**

The parties are submitting concurrently with their pretrial memoranda a separate document entitled "Joint List of Stipulated and Disputed Exhibits."

Noonan reserves the right to enter into evidence such additional unlisted documents as are necessary to respond to or rebut testimony by any trial witness, to impeach the credibility of any trial witness, to respond to or rebut exhibits entered by Staples or to lay the foundation for the introduction of exhibits.

PLAINTIFF ALAN S. NOONAN,
By his attorneys,

/s/  Stamenia (Stephanie) Tzouganatos_____
Richard M. Gelb (BBO# 188240)
*rgelb@gelbgelb.com*
Daniel K. Gelb (BBO# 659703)
*dgelb@gelbgelb.com*
Stamenia (Stephanie) Tzouganatos (BBO# 661509)
*stzouganatos@gelbgelb.com*
GELB & GELB LLP
84 State Street
Boston, MA 02109
Telephone: (617) 345-0010
Facsimile: (617) 345-0009

Dated: September 10, 2009

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 10, 2009.

/s/ Stamenia (Stephanie) Tzouganatos
Stamenia (Stephanie) Tzouganatos

21